IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

SEWARD PROPERTY, LLC,         )
                                                             )
                                  Plaintiff,    )
                                                             )
     vs.                                                    )
                                                               )
ARCTIC WOLF MARINE, INC., et al.,    )
                                                              )    No. 3:18-cv-0078-HRH
                                Defendants.  )
_____)

O R D E R

Motion for Summary Judgment;
Motion to Dismiss

Plaintiff moves for partial summary judgment.[1] This motion is opposed by defendant Henry Tomingas,[2] and Tomingas moves for dismissal.[3] The motion to dismiss is opposed

---

[1] Docket No. 93.

[2] Docket No. 95. Tomingas' response is unorthodox in that Tomingas has copied plaintiff's motion for partial summary judgment and then crossed out certain parts and handwritten other information on the copy. Given that Tomingas is proceeding pro per, the court has considered his response despite its form. In addition, Tomingas has attached several exhibits to his response. Plaintiff objects to these exhibits, arguing that Tomingas has failed to authenticate the exhibits. Because many of the exhibits are emails sent by Tomingas and pictures presumably taken by him, the exhibits, for the most part, could have been authenticated by Tomingas. Thus, the court, in its discretion, has considered Tomingas' exhibits, to the extent they are relevant, in deciding the instant motions.

[3] Docket No. 97. Plaintiff contends that the motion to dismiss violates Local Civil Rule 7.1(a)(2) which requires that a motion include "a brief discussion of applicable points
(continued...)

-1-

by plaintiff.[4]  Oral argument was not requested and is not deemed necessary on either of the two pending motions.

## Facts

Plaintiff is Seward Property, LLC.  Plaintiff "owns shoreside land in Seward, Alaska and provides vessel owners with a place to drydock their vessels."[5]

Defendants are Arctic Wolf Marine, Inc., Henry Tomingas, and Del Schultz.  As of December 31, 2012, Tomingas owned 100% of Arctic Wolf.[6]  On March 25, 2016, Arctic Wolf was involuntarily dissolved only to be reinstated on September 14, 2016.[7]  As of December 31, 2016, according to State of Alaska corporation records, Schultz owned 100% of Arctic Wolf and Tomingas was the President and Treasurer of the corporation.[8]  After another round of involuntary dissolution and reinstatement in 2017, Arctic Wolf was again involuntarily dissolved on October 31, 2019.

---

[3](...continued)
and authorities[.]" But given Tomingas' pro per status, the court has considered Tomingas' motion to dismiss.

[4]Docket No. 100.

[5]Verified Complaint [etc.] at 2, ¶ 2, Docket No. 1.

[6]2013 Biennial Report, Exhibit 2, Verified Complaint [etc.], Docket No. 1.

[7]Exhibit 2 at 3-4, Verified Complaint [etc.], Docket No. 1.

[8]2017 Biennial Report, Exhibit 7, Verified Complaint [etc.], Docket No. 1.

-2-

In late 2014-early 2015, Tomingas and Schultz spoke about the possibility of Schultz purchasing the BERING EXPLORER from Tomingas.[9] Schultz has testified that he was interested in buying the vessel in order to develop an offshore gold mining project.[10] Schultz testified that he and Tomingas discussed exchanging some land that Schultz owned in Arizona for the vessel but that the land was never transferred because "everything fell apart" when the potential investor in the project died.[11]

In March 2015, Tomingas mentioned to Schultz that he had an Alaska corporation (Arctic Wolf) that Schultz might be interested in using for Schultz's venture.[12] Schultz testified that the corporation "was just going to be a vehicle to make this whole project go together."[13] Schultz testified that Tomingas never actually transferred his stock ownership in Arctic Wolf to him.[14] Schultz further testified that he was not aware that the State of Alaska corporation documents show him as owning 100% of the shares in Arctic Wolf in

---

[9] Exhibit 1 at 19, Defendant, Counter-Plaintiff Henry Tomingas Response, Docket No. 95.

[10] Deposition of Del Schultz at 20:5-24:22, Exhibit 3, Declaration of R. Isaak Hurst [etc.], which is appended to Plaintiff[] Seward Property's Partial Motion for Summary Judgment, Docket No. 93.

[11] Id. at 32:3-33:11.

[12] Exhibit 1 at 21, Defendant, Counter-Plaintiff Henry Tomingas Response, Docket No. 95.

[13] Schultz Deposition at 38:18-21, Exhibit 3, Plaintiff[] Seward Property's Partial Motion for Summary Judgment, Docket No. 93.

[14] Id. at 39:21-25.

-3-

2016.[15] Tomingas, however, testified that in 2015, he sent Schultz "a quitclaim deed for whatever my interest was in Arctic Wolf Marine."[16]

In March 2015, Tomingas advised Schultz that he was going to send Schultz two bills of sale for the BERING EXPLORER, one being a U.S. Coast Guard document and the other, a "simple bill of sale[.]"[17] Neither of these bills of sale has been made part of the record in this case. However, the record does contain a U.S. Coast Guard bill of sale dated October 2, 2017, in which Tomingas purported to sell the BERING EXPLORER to Del Schultz d/b/a President, Arctic Wolf Marine, Inc.[18] This bill of sale was terminated on 2/27/2018[19] because "no action ha[d] been taken to complete the documentation/deletion of this vessel. . . ."[20] Tomingas noted on the letter he received from the Coast Guard regarding the termination of the bill of sale that he spoke to Schultz about this issue and that "Del did not want vessel documented[.]"[21]

---

[15]Id. at 42:13-43:2.

[16]Deposition of Henry Tomingas at 107:17-18, Exhibit 5, Hurst Declaration, which is appended to Plaintiff[] Seward Property's Partial Motion for Summary Judgment, Docket No. 93.

[17]Exhibit 3, Motion for Dismissal, Docket No. 97.

[18]Exhibit 1 at 6, Declaration of R. Isaak Hurst [etc.], Docket No. 101.

[19]Id.

[20]Id. at 5.

[21]Id.

Tomingas contends that the BERING EXPLORER was hauled out and blocked in November of 2015. Mark Nelson, plaintiff's owner and manager, avers that the vessel was not delivered to plaintiff's property until sometime in March 2016.[22] Tomingas contends that the haul out was done by Will Allen and that Allen was plaintiff's manager. However, Nelson avers that "Will Allen has never been an employee or manager of Seward Property. He operates a business named Quicksilver Marine that performed work for Tomingas and Shultz, [sic] including the haul out of the vessel."[23]

Tomingas contends that the haul out was "botched."[24] There is evidence in the record, in the form of an email from Allen to Schultz, in which Allen admits that "[t]here was a foul up from the beginning on the timing of the haul out[,]" but Allen contends that any rumors "about damaged frames" as result of the haul out were "simply untrue."[25] Tomingas also contends that the BERING EXPLORER has been improperly blocked, thereby damaging the vessel further.

On or about March 10, 2016, plaintiff and Arctic Wolf entered into a Vessel Storage Agreement for the storage of the BERING EXPLORER.[26] The Agreement defined the

---

[22]Declaration of Mark Nelson [etc.] at 2, ¶ 6, Notice of Errata [etc.], Docket No. 98.

[23]Declaration of Mark Nelson [etc.] at 2, ¶ 4, Docket No. 102.

[24]Defendant, Counter-Plaintiff Henry Tomingas Response at 4, Docket No. 95,

[25]Exhibit 1 at 8, Hurst Declaration, Docket No. 101.

[26]Vessel Storage Agreement, Exhibit 1, Nelson Declaration, Notice of Errata [etc.],
(continued...)

-5-

"Owner" as "the individual or entity that owns or operates the Vessel(s) specified in this document, which is being stored or repaired at Seward Property."[27] The Agreement stated that Arctic Wolf was the "Owner" of the BERING EXPLORER, the vessel to be stored by plaintiff.[28] The Agreement listed Schultz as the owner of Arctic Wolf.[29] Tomingas signed the Agreement on behalf of Arctic Wolf and listed his title as "manager."[30] Per the terms of the Agreement, "the Owner" of the BERING EXPLORER was to pay plaintiff $700 per month "for storing the vessel beginning October 23, 2015[;]" "$200.00 per month for storing additional equipment located on the property, i.e. Excavator, screening plant, fire truck generator, etc.[;]" and "$1,500 annually for blocking the vessel."[31] Schultz testified that he never instructed Tomingas to sign the Storage Agreement.[32] Tomingas testified that he signed the Agreement "not as a[n] individual, but for . . . Del and for his operations."[33]

---

[26](...continued)
Docket No. 98.

[27]Id. at 2.

[28]Id. at 1.

[29]Id. at 10.

[30]Id.

[31]Id. at 1.

[32]Schultz Deposition at 57:3-5, Exhibit 3, Hurst Declaration, which is appended to Plaintiff[] Seward Property's Partial Motion for Summary Judgment, Docket No. 93.

[33]Tomingas Deposition at 230:9-12, Exhibit 5, Hurst Declaration, which is appended to Plaintiff[] Seward Property's Partial Motion for Summary Judgment, Docket No. 93.

-6-

Plaintiff contends that Arctic Wolf stopped paying the storage fees for the vessel and the equipment on December 1, 2017.

Plaintiff commenced this action on March 19, 2018. Both Schultz and Tomingas filed answers to plaintiff's complaint in which they stated their intent to appear pro per.[34] Arctic Wolf did not answer plaintiff's complaint.

On June 29, 2018, plaintiff filed an amended complaint.[35] In its amended complaint, plaintiff asserts breach of contract, breach of the covenant of good faith and fair dealing, unjust enrichment, intentional and negligent misrepresentation, and indemnification claims. Tomingas answered the amended complaint and has asserted a counterclaim for intentional interference with contract against plaintiff and cross-claims of breach of contract and indemnity against Shultz.[36] Tomingas was represented by counsel when his amended answer was filed, but his counsel has since withdrawn and Tomingas is again proceeding pro per. Neither Schultz nor Arctic Wolf answered plaintiff's amended complaint.

A default against Arctic Wolf was entered on March 14, 2019.[37] But, a default judgment has not yet been entered against Arctic Wolf.

---

[34]Docket Nos. 7 and 8.

[35]Docket No. 15.

[36]Docket No. 61.

[37]Order re Motion for Judgment on the Pleadings (etc.) at 6, Docket No. 49.

-7-

Case 3:18-cv-00078-HRH Document 107 Filed 12/23/20 Page 7 of 20

Plaintiff now moves for summary judgment on its breach of contract and breach of the implied covenant of good faith and fair dealing claims and on Tomingas' counterclaim for intentional interference with contract. Tomingas has filed a motion to dismiss in response, which the court has treated as a cross-motion for partial summary judgment, even though it was filed after the dispositive motion deadline in this case.

Discussion

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The initial burden is on the moving party to show that there is an absence of genuine issues of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the moving party meets its initial burden, then the non-moving party must set forth specific facts showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). In deciding a motion for summary judgment, the court views the evidence of the non-movant in the light most favorable to that party, and all justifiable inferences are also to be drawn in its favor. Id. at 255. "'[T]he court's ultimate inquiry is to determine whether the 'specific facts' set forth by the nonmoving party, coupled with undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence.'" Arandell Corp. v. Centerpoint Energy Services, Inc., 900 F.3d 623, 628–29 (9th Cir. 2018) (quoting T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 631 (9th Cir. 1987)). "When[,]" as here, the "parties submit cross-motions for summary

judgment, [e]ach motion must be considered on its own merits." Fair Housing Council of Riverside County, Inc. v. Riverside Two, 249 F.3d 1132, 1136 (9th Cir. 2001) (citation omitted).

breach of contract claim

"In order to assert a claim for breach of contract, a plaintiff must generally allege: (1) existence of a contract; (2) breach; (3) causation; and (4) damages." Nicdao v. Chase Home Finance, 839 F. Supp. 2d 1051, 1068 (D. Alaska 2012). Plaintiff argues that each of these elements are undisputed in this case.

As to the first element, there is no dispute that the Vessel Storage Agreement was a valid contract between plaintiff and the corporation, Arctic Wolf Marine. Tomingas has "admitt[ed] that Arctic Wolf Marine[] entered into the Storage Agreement with Seward and did so in its ordinary course of business."[38] Schultz failed to respond to plaintiff's Second Request for Admission No. 1, which asked Schultz to "[a]dmit that on or about March 6th, 2016, YOU entered into a STORAGE AGREEMENT with SEWARD for the storage of the VESSEL[.]"[39] For purposes of the Requests for Admissions, "YOU" was defined as "defendant Del Schultz in his individual capacity and in his capacity as an officer, director,

---

[38]Responses to Plaintiff's Second Requests for Admissions at 5, Exhibit 2, Hurst Declaration, which is appended to Plaintiff[] Seward Property's Partial Motion for Summary Judgment, Docket No. 93.

[39]Plaintiff Seward Property's Second Set of Requests for Admissions to Defendant Del Schultz at 4, Exhibit 1, Hurst Declaration, which is appended to Plaintiff[] Seward Property's Partial Motion for Summary Judgment, Docket No. 93.

-9-

shareholder, manager or agent of Arctic Wolf Marine, Inc."[40]  "'It is undisputed that failure to answer or object to a proper request for admission is itself an admission[.]'" A. Farber & Partners, Inc. v. Garber, 237 F.R.D. 250, 254 (C.D. Cal. 2006) (quoting Asea, Inc. v. S. Pacific Transp. Co., 669 F.2d 1242, 1245 (9th Cir. 1982)).  Thus, Schultz has admitted that the Vessel Storage Agreement was a valid contract.

As to the second element, whether there has been a breach, there is no dispute Arctic Wolf stopped making payments under the Agreement on December 1, 2017.  Nelson avers that no payments were made after December 1, 2017.[41]  Schultz did not respond to plaintiff's Second Request for Admission No. 2 which asked him to "[a]dmit that on or about December 1, 2017, YOU stopped paying storage fees to SEWARD for storage of the VESSEL, and have not paid storage fees since that date."[42]  Schultz also did not respond to plaintiff's Second Request for Admission No. 3, which asked him to "[a]dmit that YOU have not paid the amounts due for storage of the heavy equipment at SEWARD's storage facility."[43]  Thus, Schultz is deemed to have admitted that Arctic Wolf breached the Agreement.  Moreover,

---

[40]Id. at 3.

[41]Nelson Declaration at 2, ¶ 7, Notice of Errata [etc.], Docket No. 98.

[42]Plaintiff Seward Property's Second Set of Requests for Admissions to Defendant Del Schultz at 4, Exhibit 1, Hurst Declaration, appended to Plaintiff[] Seward Property's Partial Motion for Summary Judgment, Docket No. 93.

[43]Id.

-10-

at his deposition, Schultz testified that he stopped paying plaintiff although he could not recall specifically when the payments stopped.[44]

Tomingas' attempt to show that there are questions of fact as to whether the Storage Agreement was breached fails. "If a party fails to perform its own obligations under a contract, and no valid excuse for non-performance exists, the performance obligations of the other party are discharged." Grace v. Insur. Co. of N. Amer., 944 P.2d 460, 464 n.8 (Alaska 1997). Tomingas contends that plaintiff did not perform its own obligations under the Storage Agreement because the vessel was not properly blocked, the vessel ground cover was off center, the vessel was occupied by plaintiff's employees, vessel equipment was damaged, and valuable equipment was removed from the vessel. Tomingas offers some grainy black and white photographs which he suggests show the improper blocking and that a crane is missing from the vessel.[45] Tomingas also contends that most of the wires on the vessel have been cut and that the engine and generator were damaged.

The grainy black and white photographs offered by Tomingas do not create any genuine issues of material fact. While the photographs show that there was a crane on the vessel at the time of the haul out, there is nothing that shows that the crane is now missing. Moreover, Nelson avers that he "told Tomingas' contractor, Quicksilver Marine, to move

---

[44]Schultz Deposition at 60:14-61:23, Exhibit 3, Hurst Declaration, which is appended to Plaintiff[] Seward Property's Partial Motion for Summary Judgment, Docket No. 93.

[45]Exhibit 1 at 13-14, Defendant, Counter-Plaintiff Henry Tomingas Response, Docket No. 95.

-11-

equipment that was staged on the ground at the bow of the vessel because it was blocking traffic in the storage yard. I believe Quicksilver Marine then moved the crane to its present position near the M/V BE[]RING EXPLORER."[46] Attached to Nelson's declaration are "photographs of the crane showing its present condition and position relative to the vessel."[47] Tomingas' photographs also do not show what wires were cut or how the engine and generator were damaged.

As to the third and fourth elements, there can be no dispute that plaintiff has been damaged as a result of Arctic Wolf's breach of the contract. As Nelson avers, Arctic Wolf has "not paid the amounts due under the contract" and "[d]efendants still have not removed the Vessel. . . ."[48]

Plaintiff is entitled to summary judgment on its breach of contract claim against Arctic Wolf. And, if Arctic Wolf is liable to plaintiff for breach of contract, which it is, then plaintiff argues that the court "should ignore the corporate form of Arctic Wolf Marine and impose liability directly on defendants Tomingas and Schultz personally."[49] In other words, plaintiff seeks to pierce the corporate veil of Arctic Wolf in order to hold Tomingas and Schultz personally liable for the breach of the Storage Agreement.

---

[46]Nelson Declaration at 2, ¶ 3, Docket No. 102.

[47]Nelson Declaration at 2, ¶ 3 and Exhibit 1 thereto, Docket No. 102.

[48]Nelson Declaration at 2, ¶ 9, Notice of Errata [etc.], Docket No. 98.

[49]Plaintiff[] Seward Property's Partial Motion for Summary Judgment at 13, Docket No. 93.

-12-

The court applies state law to determine whether the corporate veil can be pierced. S.E.C. v. Hickey, 322 F.3d 1123, 1128 (9th Cir. 2003). Under Alaska law, "[t]he corporate veil . . . may be pierced if the corporate form is used to defeat public convenience, justify wrong, commit fraud, or defend crime—a misconduct standard." L.D.G., Inc. v. Brown, 211 P.3d 1110, 1125 (Alaska 2009) (citation omitted). "The corporate veil may [also] be pierced when a corporation is nothing more than a 'mere instrument' of a shareholder[.]" Id. "The corporate form may be disregarded in Alaska under either of" these two alternative standards. Brown v. Knowles, 307 P.3d 915, 929 (Alaska 2013).

"The misconduct standard of veil piercing 'exists to prevent a party from obtaining an advantage through deceptive or manipulative conduct.'" Pister v. State, Dep't of Revenue, 354 P.3d 357, 364 (Alaska 2015) (quoting Elliott v. Brown, 569 P.2d 1323, 1326 (Alaska 1977)). Plaintiff contends that Tomingas and Schultz used Arctic Wolf, a corporate shell company, to avoid their obligations under the Vessel Storage Agreement and to avoid culpability for violation of the Alaska Abandoned and Derelict Vessels Act. That Act makes it unlawful to "store or leave a derelict vessel . . . at any private property without the consent of the owner of the property." AS 30.30.010(a)(2). Although plaintiff makes this argument as to both Tomingas and Schultz, plaintiff only cites to evidence that relates to Schultz. More specifically, plaintiff cites to a series of requests for admission that Schultz failed to answer:

-13-

Second Request for Admission No. 5: Admit that by not paying SEWARD for the storage of the VESSEL YOU acted in a way that a reasonable person would construe as unfair.

Second Request for Admission No. 6: Admit that at the time YOU entered into the STORAGE AGREEMENT, YOU were aware that the VESSEL needed extensive restoration.

Second Request for Admission No. 7: Admit that at the time YOU entered into the STORAGE AGREEMENT, YOU lacked the capital to pay storage fees due under the terms of the STORAGE AGREEMENT.

Second Request for Admission No. 8: Admit that at the time YOU entered into the STORAGE AGREEMENT, YOU did so in the course of business, as an officer, director or agent of Arctic Wolf Marine Inc.

Second Request for Admission No. 9: Admit that at the time YOU entered into the STORAGE AGREEMENT, YOU did so in YOUR personal capacity for YOUR personal interests.

Second Request for Admission No. 10: Admit that YOU used funds from a personal bank account to pay for costs associated with performing YOUR duties under the STORAGE AGREEMENT.

* * *

Second Request for Admission No. 20: Admit that the VESSEL never had the insurance required under the STORAGE AGREEMENT.

Second Request for Admission No. 21: Admit the VESSEL's Certificate of Documentation had expired when YOU entered into the STORAGE AGREEMENT.[50]

---

[50]Plaintiff Seward Property's Second Set of Requests for Admissions to Defendant (continued...)

-14-

Plaintiff argues that if these requests for admission are deemed admitted, then they establish that Schultz "stored a derelict vessel at Seward Property's storage yard and lacked the capital to pay the storage fees or to restore the Vessel to a seaworthy condition."[51] Thus, plaintiff argues that the misconduct standard for piercing the corporate veil as to Schultz has been met.

The court agrees. By failing to answer the foregoing requests for admission, which are now deemed admitted, Schultz has admitted that the misconduct standard for piercing the corporate veil has been met. Plaintiff is entitled to summary judgment that the corporate veil of Arctic Wolf Marine may be pierced as to Schultz under the misconduct standard. But because plaintiff has cited to no evidence in support of its contention that this standard can be met as to Tomingas, plaintiff is not entitled to summary judgment that the corporate veil may be pierced as to Tomingas under the misconduct standard.

Plaintiff also argues that the corporate veil may be pierced as to both Schultz and Tomingas under the mere instrument standard. Under this test, the court

> ask[s] whether (a) the shareholder sought to be charged owns all or most of the stock of the corporation; (b) the shareholder has subscribed to all of the capital stock of the corporation or otherwise caused its incorporation; (c) the corporation has grossly inadequate capital; (d) the shareholder uses the property

---

[50](...continued)
Del Schultz at 4-7, Exhibit 1, Hurst Declaration, which is appended to Plaintiff[] Seward Property's Partial Motion for Summary Judgment, Docket No. 93.

[51]Plaintiff[] Seward Property's Partial Motion for Summary Judgment at 18, Docket No. 93.

-15-

> of the corporation as his own; (e) the directors or executives of the corporation act independently in the interest of the corporation or simply take their orders from the shareholder in the latter's interest; and (f) the formal legal requirements of the corporation are observed.

L.D.G., 211 P.3d at 1125–26. "'It is not necessary for all six factors to be satisfied before instrumentality can be found,' but the factors help the fact-finder to decide whether the evidence favors piercing the veil." Id. (quoting Nerox Power Sys., Inc. v. M–B Contracting Co., 54 P.3d 791, 802 (Alaska 2002)).

Plaintiff's mere instrument argument fails on the first factor. With what is currently before the court, it remains unclear as to who owned the stock in Arctic Wolf at the time the Storage Agreement was signed. Tomingas contends that Schultz owned the corporation in March 2016 and Schultz contends that he did not. And, plaintiff has not offered any evidence either way. The last biennial report filed for Arctic Wolf provides that as of December 31, 2016, Schultz owned 100% of the corporation, but that does not necessarily mean that he owned 100% of the corporation as of March 2016, when the Storage Agreement was signed. Plaintiff is not entitled to summary judgment that the corporate veil may be pierced as to either Schultz or Tomingas under the mere instrument test.

<u>breach of the implied covenant of good faith and fair dealing</u>

"In Alaska, all contracts also include the implied covenant of good faith and fair dealing." Nicdao, 839 F. Supp. 2d at 1068. "The purpose of the covenant of good faith and fair dealing is to effectuate the reasonable expectations of the parties to the agreement, not

-16-

to alter those expectations." Id. (citation omitted). "Thus, the covenant cannot be interpreted to prohibit what is expressly permitted by the contract." Id. at 1068-69 (citation omitted). "The covenant of good faith and fair dealing includes both subjective and objective elements." Id. at 1069. "The subjective element prohibits one party from acting to deprive the other of the benefit of the contract." Id. (citation omitted). "The objective element requires each party to act in a manner that a reasonable person would regard as fair." Id. (citation omitted). "A party asserting a breach of the covenant must show that both the subjective and objective elements of the covenant have been violated." Id.

Plaintiff argues that there can be no dispute that "Schultz . . . breached the implied covenant of good faith and fair dealing. . . ."[52] Schultz did not respond to plaintiff's Second Request for Admission No. 4, in which he was asked to "[a]dmit that by not paying SEWARD for the storage of the VESSEL or heavy equipment, YOU deprived SEWARD of its benefit under the STORAGE AGREEMENT."[53] Schultz also did not respond to plaintiff's Second Request for Admission No. 5 which asked him to "[a]dmit that by not paying SEWARD for the storage of the VESSEL YOU acted in a way that a reasonable

---

[52]Plaintiff[] Seward Property's Partial Motion for Summary Judgment at 13, Docket No. 93.

[53]Plaintiff Seward Property's Second Set of Requests for Admissions to Defendant Del Schultz at 4, Exhibit 1, Hurst Declaration, which is appended to Plaintiff[] Seward Property's Partial Motion for Summary Judgment, Docket No. 93.

-17-

person would construe as unfair."[54] Thus, plaintiff argues that Schultz has admitted that both the objective and subjective elements of a breach of the implied covenant claim have been met. Moreover, at his deposition, Schultz testified that the "nonpayment" to plaintiff was not fair.[55]

As an initial matter, this claim can only be asserted against Arctic Wolf. It cannot be asserted directly against Schultz as he was not a party to the Storage Agreement. As to Arctic Wolf, as set above, "YOU" for purposes of the requests for admissions included both Schultz individually and the actions he took on behalf of the corporation, Arctic Wolf. Thus, Schultz has admitted that Arctic Wolf breached the implied covenant of good faith and fair dealing. Plaintiff is entitled to summary judgment that Arctic Wolf breached the covenant of good faith and fair dealing. And, as set out above, Schultz is personally liable for this breach because the corporate veil of Arctic Wolf may be pierced as to Schultz.

<u>intentional interference counterclaim</u>

Plaintiff argues that it is entitled to summary judgment on Tomingas' intentional interference with contract counterclaim.

> The tort of intentional interference with contractual relations has six elements: "(1) an existing contract between [the plaintiff] and a third party; (2) defendant's knowledge of the contract and intent to induce a breach; (3) breach; (4) wrongful conduct of

---

[54]Id.

[55]Schultz Deposition at 63:1-3, Exhibit 3, Hurst Declaration, which is appended to Plaintiff[] Seward Property's Partial Motion for Summary Judgment, Docket No. 93.

> the defendant causing the breach; (5) damages; and (6) absence
> of privilege or justification for the defendant's conduct."

Cornelison v. TIG Insur., 376 P.3d 1255, 1269 (Alaska 2016) (quoting K & K Recycling, Inc. v. Alaska Gold Co., 80 P.3d 702, 716 (Alaska 2003)).

Tomingas' counterclaim is based on an allegation that he and Schultz "arrived at an agreement for the sale of" the BERING EXPLORER whereby "Tomingas would transfer title to" Schultz and Schultz "would convey real estate in Arizona as purchase consideration."[56] But, Tomingas has admitted "that no bilaterally executed document exists concerning sale of the Vessel."[57] In this instance, there must be an executed writing in order for there to be a valid contract because the alleged contract involves the sale of real property. Both Alaska and Arizona have statutes of fraud which require that contracts for the sale of real property be executed in writing. AS 09.25.010(b); A.R.S. § 44-101(6). This claim also fails as there is no evidence that plaintiff was aware of the alleged contract between Tomingas and Schultz. And, in fact, Nelson avers that "[n]either I, nor Seward Property, were made aware of this alleged oral contract between Tomingas and" Schultz.[58] Plaintiff is entitled to summary judgment on Tomingas' intentional interference with contract counterclaim.

---

[56]Amended Answer, Counterclaim, and Crossclaim of Henry Tomingas at 17, ¶ 12, Docket No. 61.

[57]Tomingas' Response to Request for Admissions, Exhibit 2 at 10, Hurst Declaration, which is appended to Plaintiff[] Seward Property's Partial Motion for Summary Judgment, Docket No. 93.

[58]Nelson Declaration at 3, ¶ 11, Notice of Errata [etc.], Docket No. 98.

## Conclusion

Tomingas' motion to dismiss[59] is denied. Plaintiff's motion for partial summary judgment[60] is granted in part and denied in part. The motion is granted as to plaintiff's breach of contract and breach of the implied covenant of good faith and fair dealing claims against Arctic Wolf Marine, Inc. The motion is granted as to plaintiff's contention that the corporate veil of Arctic Wolf Marine, Inc. may be pierced as to defendant Schultz. The motion is also granted as to Tomingas' intentional interference with contract counterclaim, and this counterclaim is dismissed with prejudice. Plaintiff's motion is otherwise denied.

DATED at Anchorage, Alaska, this 23rd day of December, 2020.

/s/ H. Russel Holland
United States District Judge

---

[59] Docket No. 97.

[60] Docket No. 93.