# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ALASKA

SEWARD PROPERTY, LLC, an
Alaska Limited Liability Company,

                Plaintiff,

  v.

ARCTIC WOLF MARINE, INC. et al.,

                Defendants.

Case No. 3:18-cv-00078-SLG

## **ORDER RE ALL PENDING MOTIONS**

This order addresses three pending motions filed by Plaintiff Seward Property, LLC ("Seward Property"): (1) *Motion for Reasonable Attorney Fees, Costs, and Prejudgment Interest* at Docket 188; (2) *Motion to Correct or Amend Judgment* at Docket 189; and (3) *Motion Pursuant to Fed. R. Civ. P. 70 for Holding Defendants in Contempt for Failure to Perform a Specific Act* at Docket 190. Self-represented Defendant Henry Tomingas filed a response in the form of an *Objection to All Plaintiff's Motions of August 1st 2022* at Docket 191. Defendants Arctic Wolf Marine, Inc. ("Arctic Wolf Marine"), and Del Schultz did not file responses to these motions. Oral argument was not requested and was not necessary to the Court's determination.

# BACKGROUND

The factual allegations and procedural history of this case are set forth in detail in the Court's Order at Docket 107 and Decision and Order at Docket 186. The Court assumes familiarity here. As relevant here, the Court entered a partial final judgment in favor of Seward Property on April 27, 2021, ordering Arctic Wolf Marine and Mr. Schultz, jointly and severally, to pay $52,000 in vessel storage fees accrued through January 2021 as a result of their breach of the parties' Vessel Storage Agreement and breach of the implied covenant of good faith and fair dealing.[1] The Court also ordered Arctic Wolf Marine and Mr. Schultz to cause the R/V Bering Explorer, as well as any associated equipment, to be removed from Seward Property's ship storage yard on or before July 21, 2021.[2] The vessel was not removed by that date.[3] Remaining for resolution was whether Mr. Tomingas was liable for the debts of Arctic Wolf Marine.[4] Following a two-day bench trial in late 2021, the Court pierced the corporate veil in an order filed on July 18, 2022 and held Mr. Tomingas liable for the debts of Arctic Wolf Marine to Seward Property.[5] The Court amended its April 27, 2021 judgment to allow Seward

---

[1] Dockets 124, 125; *see also* Docket 110-1 at 16.

[2] Docket 125.

[3] Docket 186 at 11, ¶ 9.

[4] Docket 186 at 2, ¶ 4.

[5] Docket 186 at 11, ¶ 7.

Case No. 3:18-cv-00078-SLG, *Seward Prop., LLC v. Arctic Wolf Marine, Inc., et al.*
Order Re All Pending Motions
Page 2 of 23

Case 3:18-cv-00078-SLG   Document 196   Filed 12/05/22   Page 2 of 23

Property to recover the $52,000 judgment from Mr. Tomingas, jointly and severally with the other two Defendants.[6]  Although the Court found that Seward Property could seek to enforce against Mr. Tomingas the provision of the earlier judgment ordering the removal of the vessel from its property, the Court did not amend that provision of the judgment.[7]

On August 1, 2022, Seward Property filed the instant motions, requesting: (1) an award of $115,463 in attorney's fees, $3,996.43 in costs, $8,152.60 in prejudgment interest, postjudgment interest at the rate set by 28 U.S.C. § 1961, and $17,700 in additional storage fees for the period from January 2021 through August 2022;  (2) a correction or amendment to the July 18, 2022 amended judgment to include Mr. Tomingas as jointly and severally responsible for the requirement to remove the R/V Bering Explorer from Seward Property's property; (3) an order holding all Defendants in contempt for failing to remove the vessel from Seward Property's property by July 21, 2021; and (4) as a sanction for Defendants' alleged contempt, conversion of Defendants' duty to remove the vessel into an additional award of $658,507.65 to reflect Seward Property's estimated cost of removing the vessel, as well as associated prejudgment interest

---

[6] Docket 187.

[7] Docket 186 at 11-12, ¶ 9; Docket 187.

Case No. 3:18-cv-00078-SLG, *Seward Prop., LLC v. Arctic Wolf Marine, Inc., et al.*
Order Re All Pending Motions
Page 3 of 23

and attorney's fees.[8]  The Court interprets Mr. Tomingas' responsive filing as expressing his opposition to all of these requests, although his filing focuses primarily on the language of the Court's July 18, 2022 amended judgment and attempts to dispute facts the Court found through trial and in its prior decisions.[9]

## DISCUSSION

Seward Property seeks attorney's fees pursuant to Fed. R. Civ. P. 54(d)(2), Local Civil Rule 54.2, and the parties' Vessel Storage Agreement; costs pursuant to Fed. R. Civ. P. 54(d) and Local Civil Rule 54.1; prejudgment interest pursuant to Local Civil Rule 58.1(c) and the parties' Vessel Storage Agreement; postjudgment interest pursuant to 28 U.S.C. § 1961; and additional storage fees pursuant to the parties' Vessel Storage Agreement.[10]  Seward Property seeks a corrected or amended judgment pursuant to Fed. R. Civ. P. 60(a) or 59(e).[11]  Lastly, Seward Property seeks a contempt holding and conversion of the Court's order of specific performance into monetary damages, citing Fed. R. Civ. P. 70.[12]  The Court addresses each of these requests in turn.

---

[8] Dockets 188-190.

[9] *See generally* Docket 191.

[10] Docket 188.

[11] Docket 189.

[12] Docket 190.

Case No. 3:18-cv-00078-SLG, *Seward Prop., LLC v. Arctic Wolf Marine, Inc., et al.*
Order Re All Pending Motions
Page 4 of 23

## I.  Motion for Attorney's Fees, Costs, Interest, and Additional Storage Fees

### A.  Attorney's Fees

Acknowledging the general presumption in federal maritime law that parties are not entitled to attorney's fees, Seward Property asserts that the parties negotiated for the award of attorney's fees through their Vessel Storage Agreement.[13]  The Court agrees with Seward Property that the parties' contract permits it to recover its reasonable attorney's fees.[14]

The parties executed a valid contract through the Vessel Storage Agreement, the existence and enforceability of which the Court has already recognized.[15]  The Vessel Storage Agreement clearly provides that attorney's fees and other legal costs are available to Seward Property.  Section 7.1 of the contract requires Arctic Wolf Marine to "indemnify, defend and hold harmless Seward Property from and against all Losses resulting from: (a) Owner's breach of any

---

[13] Docket 188 at 4 (noting the general presumption and attorney's fees provision in the parties' Vessel Storage Agreement); *Flores v. Am. Seafoods Co.*, 335 F.3d 904, 910 (9th Cir. 2003) ("Federal maritime law makes no provision for attorneys' fees.").

[14] *See Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 257 (1975) (citations omitted) ("Other recent cases have also reaffirmed the general rule that, absent statute or enforceable contract, litigants pay their own attorneys' fees."), *superseded by statute*, Civil Rights Attorney's Fees Awards Act of 1976, 90 Stat. 2641; *see also M/V Am. Queen v. San Diego Marine Constr. Corp.*, 708 F.2d 1483, 1492-93 (9th Cir. 1983) (recognizing that an award of attorney's fees is permissible in a maritime case involving a contract containing an express provision for such an award).

[15] Docket 171-2 (Vessel Storage Agreement); Docket 107 at 9-10 (Order Re Motion for Summary Judgment and Motion to Dismiss).

Case No. 3:18-cv-00078-SLG, *Seward Prop., LLC v. Arctic Wolf Marine, Inc., et al.*
Order Re All Pending Motions
Page 5 of 23

covenant of warranty in this Agreement . . ."[16]  Section 1.5 defines "Losses" as "all losses, costs, claims, demands, damages or liabilities of any kind, **including without limitation attorneys' fees and associated legal expenses**, whether incurred before, during or after any trial or appeal and whether or not taxable as costs."[17]  Based on this language, the Court concludes that the parties' agreement allows for the recovery of attorney's fees since: (1) Defendants breached the contract by failing to pay for the storage services, (which the Court has already determined); and (2) in attempting to recover from that breach, Seward Property suffered a "Loss" in the form of incurring attorney's fees and other legal expenses.

In evaluating a litigant's fee request, a district court may determine whether a proposed award is reasonable, even where the authorizing contract does not provide expressly for "reasonable" attorney's fees.[18]  Careful scrutiny is warranted in this case given the large amount of attorney's fees requested, which is more than twice the $52,000 judgment awarded to Seward Property.[19]  "The most useful

---

[16] Docket 171-2 at 6, § 7.1.

[17] Docket 171-2 at 2, § 1.5 (emphasis added).

[18] *See United States v. Mountain States Const. Co.*, 588 F.2d 259, 263 (9th Cir. 1978) (citing 11 Samuel Williston, A Treatise on the Law of Contracts § 1418 at 656-59 (3d ed. 1968) (upholding a district court's decision not to enforce a contractual provision allowing attorney's fees); *see also Cable Marine, Inc. v. M/V Trust Me II*, 632 F.2d 1344, 1345 (5th Cir. 1980) (citations omitted) ("[A] court in its sound discretion may decline to award attorney's fees authorized by a contractual provision when it believes that such an award would be inequitable and unreasonable.").

[19] *See Vargas v. Howell*, 949 F.3d 1188, 1196 (9th Cir. 2020) (noting that the relationship between the attorney's fees sought and the amount recovered in a case "is a legitimate

Case No. 3:18-cv-00078-SLG, *Seward Prop., LLC v. Arctic Wolf Marine, Inc., et al.*
Order Re All Pending Motions
Page 6 of 23

Case 3:18-cv-00078-SLG   Document 196   Filed 12/05/22   Page 6 of 23

starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."[20]  In calculating this "lodestar" amount and determining the need for any adjustments thereto, Ninth Circuit district courts consider the factors articulated in *Kerr v. Screen Actors Guild, Inc*., 526 F.2d 67, 70 (9th Cir. 1975).[21]  A court may begin this inquiry by looking to the hours claimed by the prevailing party's attorney, but it may reduce those hours if documentation is inadequate; the case was overstaffed and hours are duplicated; or the hours expended are excessive or otherwise unnecessary.[22]  Courts need not embark on a line-by-line evaluation of a party's legal invoices; instead, they have authority to make an across-the-board

---

consideration in evaluating the reasonableness of the work performed . . .").

[20] *Hensley v. Eckerhart*, 461 U.S. 433 (1983).

[21] *Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996) ("After making [the lodestar] computation, the district court then assesses whether it is necessary to adjust the presumptively reasonable lodestar figure on the basis of the *Kerr* factors that are not already subsumed in the initial lodestar calculation."), *amended on denial of reh'g*, 108 F.3d 981 (9th Cir. 1997).  The *Kerr* factors are: (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.  *Kerr*, 526 F.2d at 70 (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-20 (5th Cir. 1974), *abrogated by Blanchard v. Bergeron*, 489 U.S. 87 (1989)).

[22] *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986), *amended by* 808 F.2d 1373 (9th Cir. 1987).

percentage cut in the hours claimed to "trim[] the fat."[23]  In doing so, a district court must provide a "concise but clear explanation" of its reasons for the fee award."[24]

Turning to Seward Property's requested award, as an initial matter the Court notes that Seward Property's counsel failed to comply fully with Local Civil Rule 54.2.  This rule requires, among other things, a declaration or affidavit that includes "the total number of hours worked and billing rate for each lawyer and paraprofessional."[25]  Although Seward Property provided itemized billing records, the records and its counsel's declaration fail to include the total number of hours billed.[26]  The records also fail to identify which timekeeper is associated with each time entry, a common practice many law firms follow to ensure they convey clearly the time spent and associated hourly rates on matters involving multiple timekeepers.[27]  These omissions render calculation of the lodestar more difficult, but the Court nonetheless will use Seward Property's requested amount as a starting point from which to evaluate the reasonableness of its request.[28]

---

[23] *Gates v. Deukmejian*, 987 F.2d 1392, 1399 (9th Cir. 1992) (citations omitted).

[24] *Hensley*, 461 U.S. at 437; *accord Gonzalez v. City of Maywood*, 729 F.3d 1196, 1203 (9th Cir. 2013) (citation omitted); *Gates*, 987 F.2d at 1402.

[25] L. Civ. R. 54.2(c)(1), (2).

[26] *See generally* Docket 188-3.  Although some invoices display the "Total Billable Hours" billed during a given time period, many of the invoices do not contain this figure, and counsel for Seward Property failed in its declaration to identify the total number of hours billed throughout the entire representation.  *See, e.g.*, Docket 188-3 at 7.

[27] *See generally* Docket 188-3.

[28] *See Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1111 (9th Cir. 2014) (citations and

Case No. 3:18-cv-00078-SLG, *Seward Prop., LLC v. Arctic Wolf Marine, Inc., et al.*
Order Re All Pending Motions
Page 8 of 23

From there, the Court looks to the prevailing hourly rate for maritime work performed by Anchorage-based attorneys of comparable skill, experience, and reputation.[29] Seward Property's law firm charged between $100 and $350 per hour in this case.[30] Despite submitting its own counsel's declaration asserting that these hourly rates are reasonable, Seward Property generally has failed to meet its burden of producing satisfactory evidence of the prevailing market rate for a maritime lawyer in the District of Alaska.[31] An affidavit submitted only by the attorney representing the party seeking fees fails to "conclusively establish the prevailing market rate."[32] In the Court's experience, however, these hourly rates are within the range sought and awarded in other Alaska cases decided over the last decade. Still, the higher end of the hourly rates applied ($350) may push the

---

internal quotations omitted) ("By and large, the [district] court should defer to the winning lawyer's professional judgment as to how much time was required to spend on the case.").

[29] *See Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir. 2008) (ruling that a district court erred by failing to identify the prevailing hourly rate in the relevant community for similar services by lawyers of reasonably comparable skill, experience, and reputation).

[30] *See generally* Docket 188-3.

[31] *See Blum v. Stenson*, 465 U.S. 886, 895 n. 11 (1984) ("[T]he burden is on the fee applicant to produce satisfactory evidence—**in addition to the attorney's own affidavits**—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.") (emphasis added); *Hamby v. Walker*, No. 3:14-cv-00089-TMB, 2015 WL 1712634, at *4-7 (D. Alaska Apr. 15, 2015) (citing *Camacho*, 523 F.3d at 980) (applying *Blum* to find that a lower rate than that requested by a party was reasonable).

[32] *Camacho*, 523 F.3d at 980.

Case No. 3:18-cv-00078-SLG, *Seward Prop., LLC v. Arctic Wolf Marine, Inc., et al.*
Order Re All Pending Motions
Page 9 of 23

limits of what is reasonable for an attorney with experience comparable to that of Seward Property's lead counsel, Mr. Hurst.[33]

Using the relevant *Kerr* factors as a guide, the Court must consider whether Seward Property's counsel billed a reasonable number of hours in this case and, if not, whether a reduction is warranted for hours that are "excessive, redundant, or otherwise unnecessary."[34] Here, the number of hours spent working on the matter appears excessive. The corporation never appeared; Mr. Schultz initially appeared at the outset of the case but did not oppose Seward Property's summary judgment motion. This case involved a relatively straightforward set of facts. The allegations centered on Defendants' readily ascertainable failure to pay for the storage of a vessel.[35] Similarly, the legal issues were not complex as the common-law claims on which Seward Property prevailed should not have required extensive research or creative lawyering. Granted, the case did involve a two-day bench trial (albeit on a straightforward veil-piercing issue with facts in Seward Property's

---

[33] *See Blakeslee v. Shaw Env't & Infrastructure, Inc.*, No. 3:09-cv-00214-SLG, 2013 WL 11309603, at *2 (D. Alaska Oct. 28, 2013) (finding that hourly rates between $200 to $350 were reasonable for Anchorage-based attorneys); *May v. F/V LORENA MARIE*, Off. No. 939683, No. 3:09-cv-00114-SLG, 2012 WL 395286, at *3 (D. Alaska Feb. 7, 2012) (finding that an hourly rate of $250 for an experienced maritime attorney based in Anchorage was reasonable). That Mr. Hurst reduced his own rate to $250 per hour beginning in August 2019 lends credence to the Court's view that the higher end of the requested rates may be too high. Docket 188 at 6.

[34] *McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2008) (internal quotations and citation omitted).

[35] *See* Docket 107 at 2-8 (Order Re Motion for Summary Judgment and Motion to Dismiss).

favor) and the challenges presented by a self-represented litigant.[36] And Seward Property's counsel had to spend time discovering information about a relatively unknown corporation and seemingly difficult-to-parse relationships between the various parties associated therewith.[37] But overall, the Court finds that Seward Property's counsel did not represent Seward Property as efficiently and effectively as would be expected of an attorney billing $250 to $350 per hour.[38]

By way of example, counsel for Seward Property spent numerous hours in late 2018 and early 2019 drafting a motion to dismiss and associated motions to strike, despite having apparently concluded that a motion for summary judgment should be filed instead.[39] In denying all these motions, Judge Holland stated:

> The court does not understand why counsel for plaintiff would devote his time and his client's money to filing a seven-page motion to strike which is larded up with twenty-four pages of copies of records of no particular relevance to Schultz's untimely response to a motion that had already been decided. Plaintiff's reply to an unopposed motion is equally wasteful.[40]

---

[36] Docket 107 at 7.

[37] *See, e.g.*, Dockets 159-4, 159-5, 159-6, 159-7 (trial exhibits containing corporate filings of and information related to Arctic Wolf Marine); Docket 160-7 (email correspondence between the parties).

[38] *Kerr*, 526 F.2d at 70; *see also Chalmers*, 796 F.2d at 1214 (holding that counsel's time was excessive in light of his familiarity with the issues, experience as a practitioner, and the nature of the case's legal issues).

[39] *See* Docket 188-3 at 16. (time accounting entry in November 2018 stating, "Conclusion: its [sic] likely that a 12(c) motion would be successful [sic] and instead think we should file a summary judgment motion").

[40] Docket 49 at 9.

Case No. 3:18-cv-00078-SLG, *Seward Prop., LLC v. Arctic Wolf Marine, Inc., et al.*
Order Re All Pending Motions
Page 11 of 23

Case 3:18-cv-00078-SLG   Document 196   Filed 12/05/22   Page 11 of 23

As another example, it appears from Seward Property's legal invoices that its counsel spent over 30 hours researching potential causes of action and drafting and later amending a complaint in a case involving a simple breach of contract and a piercing of the corporate veil.[41]  This amount of time, especially when billed at $350 per hour, borders on excessive for a straightforward lawsuit.

In light of the foregoing and in consideration of the relevant *Kerr* factors, the Court finds that an "across-the-board percentage cut . . . in the final lodestar figure" is warranted to reach a reasonable award of attorney's fees.[42]  This downward adjustment is warranted so as to award fees only for the time and labor the Court believes this matter should have taken, considering the lack of novelty in the legal questions involved, the skill necessary for counsel for Seward Property to have succeeded in bringing this case, the preclusion of other employment opportunities counsel for Seward Property may have faced by accepting this case, the fact that the corporation was defaulted sua sponte by the Court and Mr. Schultz stopped contesting the action in 2019, the apparent non-existence of pressing time constraints, and the lack of any indicia of "undesirability" associated with this

---

[41] Docket 188-3 at 1-8.

[42] *Gates*, 987 F.2d at 1399.

Case No. 3:18-cv-00078-SLG, *Seward Prop., LLC v. Arctic Wolf Marine, Inc., et al.*
Order Re All Pending Motions
Page 12 of 23

case.[43]  Accordingly, the Court will apply a 50-percent reduction in the requested fees.[44]

B. Costs

Seward Property's request for costs falls within the Court's discretion, but the general rule is to grant costs to the prevailing party.[45]  Seward Property submitted with its filing the Bill of Cost Form AO 133 listing its expenses pursuant to Local Civil Rule 54.1(b).[46]  The Court finds that Seward Property is entitled to recover its costs, and this issue is referred to the Clerk of Court.  Seward Property shall provide the Clerk of Court with its invoices supporting the costs incurred.  In particular, some of the costs incurred for postage appear excessive.[47]

C. Prejudgment Interest

The Ninth Circuit has observed that, "in admiralty cases, prejudgment interest must be granted unless peculiar circumstances justify its denial."[48]  The

---

[43] *Kerr*, 526 F.2d at 70.

[44] *See, e.g.*, *Giovannoni v. Bidna & Keys*, 255 F. App'x 124, 125-26 (9th Cir. 2007) (upholding an across-the-board 50-percent reduction in the requested fee amount); *Robins v. Matson Terminals, Inc.*, 283 F. App'x 535 (9th Cir. 2008) (same).

[45] *See* Fed. R. Civ. P. 54(d)(1) ("Unless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party."); *Subscription Television, Inc. v. S. Cal. Theatre Owners Ass'n*, 576 F.2d 230, 234 (9th Cir. 1978) (noting the general rule of awarding costs to prevailing parties).

[46] Docket 188-2.

[47] *See, e.g.*, Docket 188-3 at 11, 21.

[48] *Haney v. Blake*, 794 F. App'x 582, 584 (9th Cir. 2019) (citing *Dillingham Shipyard v. Associated Insulation Co.*, 649 F.2d 1322, 1328 (9th Cir. 1981)); *W. Pac. Fisheries, Inc. v. SS*

Court finds that no peculiar circumstances exist here, and so an award of prejudgment interest is proper.[49] The law accords the Court some discretion in determining the proper prejudgment interest rate.[50] But the Ninth Circuit has expressed a "strong policy" in favor of applying the rate set forth in 28 U.S.C. § 1961(a), the weekly average one-year constant maturity Treasury yield, for prejudgment interest.[51] In many cases, courts apply the Treasury bill rate because it tends to reasonably compensate prevailing parties rather than penalize parties that do not prevail.[52]

Seward Property requests that the Court use as the prejudgment interest rate the 10.5% per annum interest rate provided in the Vessel Storage Agreement

---

*President Grant*, 730 F.2d 1280, 1289 (9th Cir. 1984) (citations omitted) ("It is well-established that compensatory damages in maritime cases normally include pre-judgment interest.").

[49] *See Alkmeon Naviera, S.A. v. M/V Marina L*, 633 F.2d 789, 797-98 (9th Cir. 1980) (citations omitted) (providing examples of "peculiar circumstances," such as unwarranted delay by counsel, less than actual loss and no proof of deprivation of use, a negotiated stipulated damages provision that excludes prejudgment interest, claims or defenses asserted in bad faith, and uncertainty regarding claims or damages).

[50] *W. Pac. Fisheries*, 730 F.2d at 1288-89.

[51] *Blanton v. Anzalone*, 813 F.2d 1574, 1576 (9th Cir. 1987) (remanding with an instruction to use 28 U.S.C. § 1961 to set the prejudgment interest rate); *see also Price v. Stevedoring Servs.*, 697 F.3d 820, 836 (9th Cir. 2012) ("[O]ur precedents support the reasonableness of [the § 1961] rate."); *Columbia Brick Works, Inc. v. Royal Ins. Co.*, 768 F.2d 1066, 1071 (9th Cir. 1985) (citing *W. Pac. Fisheries*, 730 F.2d at 1289) ("We have determined that the measure of interest rates prescribed for postjudgment interest in 28 U.S.C. § 1961 (a) is also appropriate for fixing the rate for prejudgment interest unless the equities of a particular case demand a different rate.").

[52] *See Dishman v. UNUM Life Ins. Co. of Am.*, 269 F.3d 974, 988 (9th Cir. 2001) (citing *W. Pac., Fisheries*, 730 F.2d at 1288) ("Prejudgment interest is an element of compensation, not a penalty.").

Case No. 3:18-cv-00078-SLG, *Seward Prop., LLC v. Arctic Wolf Marine, Inc., et al.*
Order Re All Pending Motions
Page 14 of 23

Case 3:18-cv-00078-SLG   Document 196   Filed 12/05/22   Page 14 of 23

for late payments, contending that "the Parties clearly bargained for the appropriate interest rate in the event of past due payments."[53]  A district court may find, "on substantial evidence, that the equities of [a] particular case require a different rate" than the Treasury bill rate.[54]  A contractual rate applicable to invoices may offer such evidence, but a court is not constrained to applying a contractual rate.[55]

Seward Property points to no authority that would mandate application of the contractual rate in this instance.  Additionally, the Court finds that the large difference between the contractual rate and the Treasury bill rate would risk transforming a compensatory award into a punishment.[56]  There is no indication that Defendants engaged in bad faith or that any other special circumstances exist that warrant deviating from the prejudgment interest rate courts typically apply.

---

[53] Docket 188 at 9.

[54] *Blankenship v. Liberty Life Assurance Co.*, 486 F.3d 620, 628 (9th Cir. 2007) (citations and quotations omitted).

[55] *Compare Offshore Marine Contractors, Inc. v. Palm Energy Offshore, L.L.C.*, 779 F.3d 345, 351 (5th Cir. 2015) (ruling that a district court did not abuse its discretion in applying the interest rate specified in the parties' invoices as the prejudgment interest rate), *with TMF Tr. Ltd. v. M/T Megacore Philomena*, No. 2:17-cv-09010-AGR, 2018 WL 3830612 (C.D. Cal. July 11, 2018) (applying the interest rate specified at 28 U.S.C. § 1961(a) despite the existence of invoices and a maritime lien).

[56] *See W. Pac. Fisheries*, 730 F.2d at 1288 (citations omitted) (warning that a district court's "discretion must be exercised with a view to the fact that pre-judgment interest is an element of compensation, not a penalty.").

Accordingly, the Court will apply the Treasury bill rate as the prejudgment interest rate.

In light of the above, Seward Property is awarded prejudgment interest on the $52,000 judgment previously awarded, in the amount of $1,170.42, calculated for the 545 days from January 19, 2021 to the date of the amended judgment, July 18, 2022, using the 2021 year-end Treasury bill rate of 0.37% for the interest accruing in 2021 and the Treasury bill rate from the calendar week before July 18, 2022 of 3.11% for the interest accruing in 2022.[57] This approach is consistent with that used by other courts in this Circuit for calculating prejudgment interest accruing over a multi-year period.[58]

D. Postjudgment Interest

Congress enacted 28 U.S.C. § 1961 to require the award of postjudgment interest in federal court litigation.[59] As for the interest rate, "[n]ormally, the interest rate prescribed for post-judgment interest in 28 U.S.C. § 1961 is applied unless

---

[57] *See* Docket 188 at 9 (requesting prejudgment interest for the 545 days between January 19, 2021 and July 18, 2022).

[58] *See, e.g.*, *Erler v. Erler*, No. 12-cv-02793 CRB (NC), 2018 WL 4773414, at *3 (N.D. Cal. Apr. 11, 2018), *adopted,* No. 12-CV-02793-CRB, 2018 WL 3421911 (N.D. Cal. July 16, 2018).

[59] 28 U.S.C. § 1961(a) ("Interest shall be allowed on any money judgment in a civil case recovered in a district court."); *see also City of Milwaukee v. Cement Div., Nat'l Gypsum Co.*, 515 U.S. 189, 194 (1995) (recognizing same); *Air Separation v. Underwriters at Lloyd's of London*, 45 F.3d 288, 290 (9th Cir. 1994) (citing 28 U.S.C. § 1961; *Perkins v. Standard Oil Co.*, 487 F.2d 672, 674 (9th Cir. 1973)) (". . . [P]ostjudgment interest on a district court judgment is mandatory.").

Case No. 3:18-cv-00078-SLG, *Seward Prop., LLC v. Arctic Wolf Marine, Inc., et al.*
Order Re All Pending Motions
Page 16 of 23

Case 3:18-cv-00078-SLG   Document 196   Filed 12/05/22   Page 16 of 23

the equities of the case demand a different rate."[60]  The Court sees no reason to depart from the statutory rate in this case and grants Seward Property's request for postjudgment interest at the Treasury bill rate.

E. Additional Storage Fees

Seward Property requests additional storage fees to account for the R/V Bering Explorer's remaining on its property notwithstanding the Court ordering its removal by July 21, 2021.[61]  Seward Property requests these additional fees from January 19, 2021, the date of its motion for entry of final judgment seeking to recover the then-past-due storage fees, through the filing of the instant motion on August 1, 2022.[62]  Mr. Tomingas does not dispute that the vessel has remained on Seward Property's property.  Instead, he contends that "Plaintiff continues to block access to the vessel plus created a huge restoration cost by stripping and damaging the vessel during the seven years of litigation . . ."[63]

Mr. Tomingas has repeatedly made clear his view that the vessel is still salvageable.  But after considering the evidence presented at the bench trial, this

---

[60] *Prosser v. F/V CRYSTAL VIKING*, No. C89-850Z, 1993 WL 668292, at *1 (W.D. Wash. May 13, 1993) (citing *W. Pac. Fisheries*, 730 F.2d at 1280).

[61] Docket 188 at 10.

[62] Docket 188; *see also* Docket 110 (Motion for Entry of Partial Final Judgment Under Fed. R. Civ. P. 54(b)).

[63] Docket 191 at 3.

Court concluded otherwise.[64]  Given this finding, the Vessel Storage Agreement makes clear that Seward Property may demolish and remove the vessel from its property.  Specifically, the agreement provides that in the event of default by the vessel owner, Seward Property has the right to suspend the vessel owner's access to the storage yard; it has the right to "remove all personal property," including the vessel, from its storage yard; and it has the right to recover the damages it sustains by reason of the default, including "all reasonable costs incurred by Seward Property in removing personal property" from its storage yard.[65]

The Court finds that Seward Property is entitled to the additional storage fees from January 2021 through August 2022.  But the vessel has been at Seward Property's property since October 2015, and payment of the storage fees has been in arrears since that time despite some modest payments made in 2016 and 2017.[66]  Given the long-term default, Seward Property may recover its storage fees through August 2022 but should now expeditiously exercise its right to demolish the vessel and seek recovery of its reasonable costs to do so from Defendants.[67]

---

[64] Docket 186 at 8, ¶ 24.

[65] Docket 1-1 at 8, ¶¶ 9.2, 9.3.

[66] Docket 110-1 at 16.

[67] *See* Docket 1-1 at 8, ¶¶ 9.1, 9.2, 9.3 ("Upon the termination or suspension of Owner's right to use Seward Property's Storage Yard or its facilities as provided in this Article 9, Seward Property may, at its option, remove all personal property and all work in progress of Owner from Seward Property's Storage Yard or its facilities . . .").

Case No. 3:18-cv-00078-SLG, *Seward Prop., LLC v. Arctic Wolf Marine, Inc., et al.*
Order Re All Pending Motions
Page 18 of 23

Case 3:18-cv-00078-SLG   Document 196   Filed 12/05/22   Page 18 of 23

## II.  <u>Motion to Correct or Amend Judgment</u>

Seward Property requests that the Court correct or amend its July 18, 2022 judgment pursuant to Fed. R. Civ. P. 60(a) or 59(e) to specify that Mr. Tomingas (along with the other Defendants) must cause the removal of the R/V Bering Explorer and associated equipment from its property.[68]  Seward Property suggests that the Court's decision not to revise that portion of its judgment was a mistake, oversight, or clerical error because the Court ruled that Seward Property "may seek to enforce [the removal] provision of the judgment against Henry Tomingas as well."[69]

The Court's decision not to amend the relevant portion of the judgment was not due to a mistake, oversight, or clerical error.  The Court intentionally let that portion of its amended order stand as originally written because the date by which Defendants were ordered to remove the vessel—July 21, 2021—had long passed by the date of the Court's amended order (July 18, 2022).  It would have been futile to order Mr. Tomingas to perform an action by a date that had already passed.  Additionally, the Court finds that none of the grounds that generally warrant relief pursuant to Fed. R. Civ. P. 59(e) applies.[70]  Similarly, because there

---

[68] Docket 189 at 1.

[69] Docket 189 at 3 (quoting Docket 186 at 11-12, ¶ 9).

[70] *See Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1111 (9th Cir. 2011) (citing *McDowell v. Calderon*, 197 F.3d 1253, 1255 n.1 (9th Cir. 1999) (en banc) (per curiam) (identifying four grounds for relief pursuant to Rule 59(e): (1) to correct manifest errors of law or fact upon which

was no clerical error or mistake, relief pursuant to Fed. R. Civ. P. 60(a) is unwarranted.[71]

## III. Motion for Contempt and Sanctions

### A. Contempt

A court may hold a disobedient party in contempt.[72]  District courts have the inherent power to do so, provided a party disobeyed a "specific and definite court order by failure to take all reasonable steps within the party's power to comply."[73]  The party requesting to hold another in contempt must prove by "clear and convincing evidence" that contempt is warranted.[74]

Mr. Tomingas is not in contempt as the order requiring the vessel's removal by July 2021 did not apply to him.  Arctic Wolf Marine was involuntarily dissolved in 2019 and hence could not have complied with the 2021 removal

---

the judgment rests; (2) to present newly discovered or previously unavailable evidence; (3) to prevent manifest injustice; or (4) to reflect an intervening change in controlling law.).

[71] *See Tattersalls, Ltd. v. DeHaven*, 745 F.3d 1294, 1299 (9th Cir. 2014) (quoting *Blanton v. Anzalone*, 813 F.2d 1574, 1577 n.2 (9th Cir. 1987)) (noting that a correction pursuant to Rule 60(a) is warranted when a court makes a "blunder[] in execution").

[72] Fed. R. Civ. P. 70(e); *Shillitani v. United States*, 384 U.S. 364, 370 (1966) (citations omitted) ("There can be no question that courts have inherent power to enforce compliance with their lawful orders through civil contempt.").

[73] *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993).

[74] *Vertex Distrib., Inc. v. Falcon Foam Plastics, Inc.*, 689 F.2d 885, 889 (9th Cir. 1982) (citations omitted).

order.[75] And Seward Property has failed to show by clear and convincing evidence that Mr. Schultz was aware of the removal order and failed to take any reasonable steps to comply with it.

B. Sanctions

Sanctions are unwarranted as Seward Property has not demonstrated that any Defendant is in contempt. And given the fact that Defendants have been unable to effectuate the vessel's removal, for whatever reason, the Court is disinclined to again order its removal by Defendants. And, as this Court previously found, the vessel is not salvageable—its demolition is the only viable option to remove it from Seward Property's property.[76] Therefore, as provided for in the Vessel Storage Agreement, Seward Property may demolish and remove the vessel and seek to recover from Defendants the reasonable costs it incurred to do so.[77] The Court notes that at the bench trial, Seward Property presented evidence that the cost for the vessel's demolition and removal would be $465,271.40. This amount seems quite high, even if some residual petroleum-based contamination exists on the property. The Court is confident that if Seward Property undertakes the vessel's demolition and removal, it could complete this task for considerably

_____

[75] Docket 186 at 8, ¶ 23.

[76] *See* Docket 186 at 8, ¶ 24.

[77] Docket 1-1 at 8, ¶¶ 9.1, 9.2, 9.3.

less expense, then seek reimbursement from Defendants for the amount it actually paid. The Court will not award Seward Property damages for the vessel's demolition and removal before any actual costs are incurred.[78]

Accordingly, Seward Property may commence its own demolition and removal of the vessel and associated equipment and submit a new request for the recovery of its reasonable costs from Defendants.

## CONCLUSION

For the reasons described above, and as set forth herein, Seward Property's *Motion for Reasonable Attorney Fees, Costs, and Prejudgment Interest* at Docket 188 is GRANTED in part and DENIED in part. Seward Property's *Motion to Correct or Amend Judgment* at Docket 189 is DENIED. Seward Property's *Motion Pursuant to Fed. R. Civ. P. 70 for Holding Defendants in Contempt for Failure to Perform a Specific Act* is DENIED.

IT IS HEREBY ORDERED that Seward Property shall recover from Defendants Hendry Tomingas, Arctic Wolf Marine, and Del Schultz, jointly and severally, the following amounts: (1) $57,731.50 in attorney's fees; (2) prejudgment interest on the previously entered $52,000 damages award, in the amount of $1,170.42 and postjudgment interest at the interest rate set by 28 U.S.C. § 1961;

---

[78] *Cf. ASARCO LLC v. Atl. Richfield Co.*, 975 F.3d 859, 866 (9th Cir. 2020) (declining to award response costs not yet incurred in the clean-up of contamination pursuant to federal environmental law).

and (3) $17,700 in additional vessel storage and blocking fees.[79]  Costs are referred to the Clerk of Court for determination.  The Clerk of Court shall enter an amended judgment accordingly.

DATED this 5th day of December, 2022, at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE

---

[79] No additional storage or blocking fees will be awarded after August 2022 as Seward Property should have reasonably sought to demolish and remove the vessel and equipment long before August 2022.

Case No. 3:18-cv-00078-SLG, *Seward Prop., LLC v. Arctic Wolf Marine, Inc., et al.*
Order Re All Pending Motions
Page 23 of 23

Case 3:18-cv-00078-SLG   Document 196   Filed 12/05/22   Page 23 of 23